25 F.3d 1055
 91 Ed. Law Rep. 876
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Kathleen BROCKMAN, Plaintiff-Appellant,
v.
SWEETWATER COUNTY SCHOOL DISTRICT NO. 1, a unified school
district, Defendant-Appellee.
 No. 93-8052.
 United States Court of Appeals, Tenth Circuit.
 May 5, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and BROWN,** District Judge.[2]
 
 
 2
 Plaintiff Kathleen Brockman appeals from the district court's order enforcing a compromise agreement. Because we agree that the parties entered an enforceable oral settlement agreement, we affirm the order.
 
 
 3
 The undisputed facts are as follows. Plaintiff worked for defendant Sweetwater County School District No. 1 as a teacher from 1971 until July 3, 1990, when defendant terminated her contract. Plaintiff brought an action under 42 U.S.C.1983 and 1988, claiming the termination violated her constitutional rights. She also alleged pendent state claims for breach of contract and of the covenant of good faith and fair dealing.
 
 
 4
 The parties appeared, with counsel, before a magistrate judge on September 8, 1992, for a settlement conference. Following a full day of negotiations, the magistrate judge stated that the parties had agreed upon a resolution of the case on the following terms: 1) defendant will pay plaintiff $35,000, to be placed in the school district's retirement fund; 2) defendant will pay plaintiff $32,000 in cash; 3) defendant will purchase an annuity for plaintiff which will pay $500 per month for twenty years or life, whichever is longer, payments to commence November 1, 1992; 4) defendant will allow a period of two years from the date of the signing of the settlement agreement for plaintiff to opt into defendant's health insurance plan for retirees; 5) letters of recommendation shall be written by several school district personnel which will "explain the plaintiff's classroom teaching abilities, positive classroom teaching abilities, and her qualifications as a teacher," Appellee's Supp.App. at 18-19; 6)defendant will expunge all negative information from plaintiff's personnel file; 7) defendant will rehire plaintiff once it receives a written letter of resignation so that defendant's records will reflect that she resigned and was not terminated; 8)any calls to the school district from potential employers of plaintiff's will be responded to by the administrators "in accordance with the information on file with the administrators after the entry of the settlement," id. at 19; and 9) the terms of the settlement will be kept confidential except as necessary for obtaining future employment.[3] Plaintiff asked clarifying questions while these terms were recited. After the terms were recited, counsel for each party stated that he or she was in agreement. Counsel for defendant then volunteered to prepare a written agreement and noted, "I think it's going to be several drafts going back and forth." Id. at 22.
 
 
 5
 Between September 8, 1992, and February 2, 1993, counsel for the parties had frequent communications about the status of the settlement. According to defendant, plaintiff demanded numerous modifications to the agreement. Defendant agreed to some but not all of these demands, then insisted that the parties meet on February 2, 1993, to conclude the matter.
 
 
 6
 Defendant arrived at that meeting with checks for $35,000 and $32,000. Plaintiff, however, refused to consummate the agreement. The reasons she gave were that the agreement did not specify that school district administrators must "talk from the file" to prospective employers, she had not approved all the letters of recommendation, and she no longer would accept the terms of the annuity agreed upon at the September 8 conference. Defendant subsequently moved to enforce the settlement agreement.
 
 
 7
 The district court found from the transcript of the settlement conference that the material terms of the compromise were established and mutually understood, and ordered the oral agreement enforced. We review the district court's enforcement of the settlement agreement for abuse of discretion. United States v. Hardage, 982 F.2d 1491, 1495 (10th Cir.1993).
 
 
 8
 Construction of a settlement agreement generally is governed by state law. United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir.), cert. denied, 113 S.Ct. 660 (1992). Wyoming law, which governs here, favors settlement of litigation. Peters Grazing Ass'n v. Legerski, 544 P.2d 449, 456 (Wyo.1975). Under Wyoming law, the existence of a contract requires a meeting of the parties' minds. Wyoming Sawmills, Inc. v. Morris, 756 P.2d 774, 775 (Wyo.1988). An oral agreement is as binding as a written one where the terms are mutually understood and agreed upon in all respects. Id. at 776. As with any contract, whether an oral contract has been entered into depends on the parties' intent and is a question of fact. Id. at 775.
 
 
 9
 Plaintiff argues it was her intent and belief that the agreement would not be consummated until it was reduced to writing, based on defense counsel's statement at the settlement conference that preparation of the written agreement would involve "several drafts going back and forth." Appellee's Supp.App. at 22.
 
 
 10
 "[W]here the parties to a contract intend that it shall be closed and consummated prior to the formal signing of a written draft, the terms having been mutually understood and agreed upon, the parties will be bound by the contract actually made, although it be not reduced to writing; but, on the other hand, if the parties do not intend to close the contract until it shall be fully expressed in a written instrument properly attested, then there will be no completed contract until the agreement shall be put into writing and signed."
 
 
 11
 Wyoming Sawmills, 756 P.2d at 775 (quoting Summers v. Mutual Life Ins. Co., 75 P. 937, 943 (Wyo.1904)).
 
 
 12
 Wyoming has adopted the objective theory of contract formation, whereby a "contractual obligation is imposed not on the basis of the subjective intent of the parties, but rather upon the outward manifestations of a party's assent sufficient to create reasonable reliance by the other party." McDonald v. Mobil Coal Producing, Inc., 820 P.2d 986, 990 (Wyo.1991). Under this theory, the court must examine plaintiff's intentional, objective manifestation of assent to a contractual relationship to determine whether an enforceable agreement was reached on September 8. See id.
 
 
 13
 The settlement conference transcript reveals that discussion of the drafting of an agreement occurred after the magistrate judge recited the terms of the settlement and counsel stated they agreed. Neither party indicated at any time that the settlement was not final until reduced to writing. Therefore, we agree with the district court that the oral settlement agreement was enforceable notwithstanding the absence of a written agreement. See Taylor v. Gordon Flesch Co., 793 F.2d 858, 862 (7th Cir.1986)(holding oral settlement enforceable despite fact plaintiff's attorney agreed at settlement conference to prepare initial draft where no part of agreement had been conditioned on acceptance of written formulation of agreement).
 
 
 14
 Plaintiff also argues that the parties' negotiations over the language of the written agreement after September 8 show that no final agreement had been reached. We disagree. All essential terms were agreed upon at the settlement conference. Plaintiff then demanded modification of many of these terms. That defendant was willing to accede to some of plaintiff's demands does not affect the binding force of the oral settlement. The following comments aptly describe the situation that occurred in this case:
 
 
 15
 "The evidence may be convincing that the parties intend to reduce their already consummated contract to writing as a mere 'memorial' thereof and not as their only operative expression of assent. In such a case, the contract is valid even though they try and fail to agree upon the form and terms of the memorial. A letter of confirmation may omit a term previously agreed on or may include a new and different term that now seems desirable. The other party may then try his hand and prepare a confirmation to which the first party will not assent. The result may be that there is no confirmation and no 'memorial.' Afterthoughts cannot be brought into the contract except by mutual assent; and the informal contract stands as made."
 
 
 16
 1 Arthur L. Corbin, Contracts 30, at 110 (1963)(quoted in Pyle v. Wolf Corp., 354 F.Supp. 346, 353 (D. Or.1972).[4]
 
 
 17
 The judgment of the United States District Court for the District of Wyoming is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [3]
 Plaintiff asked if the cash and monthly payments would be tax free. Her counsel responded that the agreement would be drafted so the money was tax free. However, there was no indication from defendant that this was an agreed upon term of the settlement
 
 
 [4]
 We do not address the applicability, if any, of the statute of frauds because the issue was not raised by plaintiff